# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| v. | ) | Criminal No. 07-303-02 |
| | ) | Civil No.   16-907 |
| FRANKLIN THOMPSON, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Conti, Chief District Judge.

I. Introduction

Franklin Thompson ("Defendant" or "Thompson"), through the federal public defender, filed a § 2255 motion (ECF No. 1142) and an amended § 2255 motion (ECF No. 1156) (the "amended motion") to challenge his sentence retroactively in light of the United States Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015) (holding that the residual clause of the Armed Career Criminal Act is unconstitutionally vague). The motions have been fully briefed and are ripe for disposition. The motion and amended motion raise the same issues and seek the same relief. Although not expressly stated therein, the amended motion supersedes the original motion and renders it moot. The court has considered the legal arguments articulated by defendant in both motions.

Defendant voluntarily and intelligently entered into a Rule 11(c)(1)(B) plea agreement with the government which recognized that he was a career offender and contained a stipulated sentence and a waiver of his right to collaterally attack that sentence. Numerous precedential decisions have held that a defendant's inability to benefit from future changes in the law does not

constitute a "miscarriage of justice" that would invalidate the binding nature of his plea agreement. The court is constrained to comply with this authority.

Subsequent legal developments do not undermine Thompson's waiver of his right to collaterally attack his sentence. In any event, it is now clear that Thompson would not be entitled to relief under *Johnson* in any event, because on March 6, 2017, the Supreme Court held that *Johnson* does not authorize challenges to career offender status under the Sentencing Guidelines. *Beckles v. United States*, No. 15-8544, 2017 WL 855781 (March 6, 2017). The amended motion must be denied.

II. Factual and Procedural Background

Thompson and numerous co-defendants were charged in a second superseding indictment at Criminal Number 07-303 with conspiracy to distribute 5.0 kilograms or more of cocaine (count 1) and conspiracy to launder the proceeds (count 3). A pre-plea investigation report was prepared which classified Thompson as a career offender. Thompson filed a motion (ECF No. 710) challenging this classification on the theory that one of his prior convictions was "stale" because it was committed before the fifteen-year time limit in U.S.S.G. § 4A1.2(e). The government filed a response (ECF No. 717), contending that Thompson's conviction was not "stale" because his probation was revoked and he was sent back to prison within the fifteen-year time period. The court held a hearing on October 21, 2010 and concluded that Thompson was correctly classified as a career offender. (ECF No. 723).

On February 15, 2011, defendant pleaded guilty to counts 1 and 3, pursuant to a written plea agreement. ECF No. 1167-2. Before accepting the guilty plea, the court engaged in a lengthy colloquy with defendant and the government to ensure that the plea was knowing and voluntary. *See* Transcript, ECF Nos. 936, 970.

Several provisions of the plea agreement are relevant to the amended motion: (1) paragraph A(6) contains a "collateral waiver," in which Thompson waived the right to file a § 2255 motion attacking his conviction or sentence; (2) paragraph C(4) provides that defendant and the government "agree that a departure and variance from the otherwise applicable Career Offender guideline found at Section 4B1.1(b)(A) of the Sentencing Guidelines is warranted"; (3) paragraphs C(4-9) contain stipulations regarding the revised guideline calculation that was negotiated and agreed upon by the parties – to wit, defendant would have a total offense level of 31 and a criminal history category of III, resulting in a guideline range of 135-168 months; and (4) paragraphs C(10-11) reflect that the parties agreed that the appropriate term of imprisonment was 151 months, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B). This term was the mid-point of a guideline range determined by the drug quantity and non-career offender status. The result was a downward variance of 111 months from the career offender guideline range. The parties noted that the court was not bound by their agreed-upon sentence.

On June 21, 2011, Thompson was sentenced. During the sentencing hearing, counsel for both defendant and the government emphasized the uniqueness of the situation and the extensive negotiations which had resulted in the plea agreement and agreed-upon sentence. *See* Transcript ECF No. 937. The court noted that count 1 carried a mandatory minimum sentence of 120 months and determined that Thompson was correctly classified as a career offender with a guideline range of 262-327 months, but accepted the plea agreement and sentence after concluding that a substantial downward departure and variance to the agreed-upon term of 151 months of imprisonment was appropriate. *Id*.

Thompson filed a direct appeal.[1]  On July 29, 2013, the court of appeals affirmed his conviction.  In part, the court of appeals observed in a nonprecedential opinion that "under the plea agreement, the parties agreed, to Thompson's benefit, that a departure from the career offender classification guideline was warranted."  ECF No. 1044-1 at 3.

In June 2015, Thompson filed a motion to reduce sentence pursuant to 18 U.S.C. § 3582(c)(2), based upon the decrease in drug offense levels in Amendment 782.  The court denied the motion.  Thompson filed a motion for reconsideration.  The court denied the motion for reconsideration, explaining in part that Thompson did not qualify for the Amendment 782 reduction because his original guideline range was based upon the career offender guideline, not the drug guideline.  ECF No. 1114.  The court of appeals affirmed this decision in a precedential opinion.  *United States v. Thompson*, 825 F.3d 198 (3d Cir. 2016); (also filed at ECF No. 1149-1).  The court of appeals noted that it was convinced that if Amendment 782 had been in effect at the time Thompson was sentenced, the parties and court would have incorporated that lower level into his agreed-upon sentence.  Nevertheless, the court reasoned that Sentencing Guideline Amendment 759[2] operated to deny Thompson the benefit of the discretionary reduction under Amendment 782, a reduction to which he had never been entitled.  *Id*.  Although Thompson's sentence was ultimately based on a departure and variance to the drug guideline range, his "applicable guideline range" at the time of sentencing was the career offender guideline.

---

[1] In the plea agreement, Thompson waived his right to take a direct appeal, with four narrow exceptions:  (1) if the government appealed the sentence; (2) if the sentence exceeded the applicable statutory limits; (3) if the sentence unreasonably exceeded the guideline range; and (4) "the issues raised in the Motion to Dismiss Indictment with Prejudice for a Violation of the Speedy Trial Act."  Plea Agreement ¶ A(6).  There arguably was no need for Thompson to appeal his career offender classification because the plea agreement contained a downward variance commensurate with non-career offender status.

[2] Amendment 759 clarified that a defendant's "applicable guideline range" is determined *before* any departures and variances.  ECF No. 1149-1 at 4 (emphasis in original); U.S.S.G. § 1B1.10 Application Note 1(A).

4

III. Legal Analysis

The government asserts, as a threshold matter, that the "collateral waiver" provision of the plea agreement is valid and enforceable. The government contends that Thompson knowingly and voluntarily waived his right to file a § 2255 motion, this waiver should be enforced, and his amended motion should be summarily denied without consideration of the merits. The government also argues that *Johnson* does not apply because Thompson's sentence was not based upon the career offender guideline, but instead was a negotiated, agreed-upon sentence pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B). The government argues that Thompson "invited" any alleged error by entering into the plea agreement and is now taking positions contrary to those he took in his Amendment 782 motion. In addition, the government contends that Thompson's California convictions do not implicate the "residual clause" at all, but remain predicate offenses under the enumerated or force clauses of § 4B1.1.

In the amended § 2255 motion, Thompson argues that under *Johnson*, his prior convictions no longer qualify as "crimes of violence," and he should not be classified as a career offender under the Sentencing Guidelines. Thompson asks this court to vacate his sentence and resentence him without the career offender enhancement and with the Amendment 782 reduction. Thompson contends that *Johnson* has been given retroactive effect and applies to the parallel "residual clause" in the Sentencing Guidelines. Thompson contends that it is unlawful to designate him as a career offender under U.S.S.G. § 4B1.1 based upon California convictions for assault with a deadly weapon and battery.

The court need not address all these arguments because the validity of a collateral waiver provision is a "threshold issue." *United States v. Mabry* ("*Mabry I*"), 536 F.3d 231, 237 (3d Cir. 2008). The validity of a collateral waiver provision must be addressed before reaching the merits of the underlying claim. *Id*. at 241-42 (rejecting a line of decisions that considered

5

ineffective assistance of counsel claims without first deciding whether defendants had waived the right to file such collateral attacks). On this threshold issue, the court concludes that Thompson's "collateral waiver" provision in the plea agreement is enforceable and his § 2255 motion must be denied.[3]

Defendant contends that the collateral waiver provision does not preclude the instant petition because it would work a "miscarriage of justice." He reasons that: (1) his designation as a career offender prevented him from qualifying for a two-level decrease in his offense level based upon Amendment 782; (2) his current sentence exceeds the high end of the non-career offender guideline range, as calculated under Amendment 782, by sixteen months; (3) he could not have relinquished his rights under *Johnson* because that decision did not exist at the time of his plea and sentence; and (4) his California convictions do not qualify as predicate offenses under current law under any of the career offender clauses (enumerated, force or residual). In sum, he contends that his sentence is now unreasonable and the collateral waiver provision should be invalidated. Thompson argues that he did not "invite" error, as the government alleges; instead, he staunchly advocated for a sentence below the career offender range.

The Court of Appeals for the Third Circuit has clearly held that "[w]aivers of appeals, if entered into knowingly and voluntarily, are valid, unless they work a miscarriage of justice." *United States v. Khattak*, 273 F.3d 557, 563 (3d Cir. 2001) (rejecting the argument that waiver of appeal provisions are void as contrary to public policy). In *Mabry I*, the court held that waivers of the right to collaterally attack sentences are equally valid, if done knowingly and voluntarily and do not work a miscarriage of justice. 536 F.3d at 237–38 . In determining the validity of a collateral waiver provision, the initial question is whether the waiver was knowing and

---

[3] As noted above, the Supreme Court's decision in *Beckles* forecloses Thompson's challenge to his guidelines classification as a career offender on the merits.

voluntary. *Id*. at 237. The second consideration is whether enforcement of the waiver would result in a miscarriage of justice. *Id*. at 242-44.

A. Knowing and Voluntary Waiver

The record clearly reflects that Thompson's entry into a plea agreement with a collateral waiver provision was both knowing and voluntary. Thompson does not challenge this prong of the analysis. During the plea hearing, the court carefully questioned Thompson at sidebar regarding his knowledge of the terms of his plea agreement. ECF No. 970 (under seal). The record reflects that experienced defense counsel engaged in lengthy negotiations with the prosecutor. The plea agreement contains hand-written insertions with the initials of defense counsel and the prosecutor. The plea hearing was recessed for several hours so that Thompson could review the final terms of the agreement that had been hammered out. It is clear that Thompson received effective assistance during the plea bargaining process. Thompson represented to the court that he understood the terms of the plea agreement, he was not threatened and he understood he was giving up significant rights by entering into the plea agreement. ECF No. 970 at 7-8, 17. The court concluded he knowingly and voluntarily entered into the plea agreement and stipulated sentence. ECF No. 936 at 35.

The court specifically questioned Thompson regarding his intent to waive his right to file a collateral attack on the guilty plea and sentence pursuant to § 2255.[4] The court exercised care

---

[4] "The Court: And do you also understand that you have totally, completely given up your ability to come back at a later time and try to collaterally attack your conviction or sentence? Do you understand that?
The Defendant: Yes, ma'am.
The Court: You understand those are very significant rights that you are giving up?
The Defendant: Yes, ma'am.
The Court: Do you have any questions about those rights?
The Defendant: No, ma'am.

to ensure that Thompson understood his rights, and specifically his right to collaterally attack his sentence. Thompson affirmed that he understood his rights and agreed to waive them. As reflected in the transcript of the proceedings, the court was satisfied and convinced that Thompson knowingly and voluntarily agreed to plead guilty, to be sentenced as set forth in the written plea agreement, and to waive any collateral attack on that sentence. ECF Nos. 936, 970.

The only issue with respect to Thompson's knowing and voluntary entry into the plea agreement would be the impact of future developments in the law. In *Brady v. United States*, 397 U.S. 742 (1970), the defendant ("Brady") was charged with kidnapping and faced the possibility of the death penalty if the case went to trial before a jury. He entered a guilty plea, with the assistance of competent counsel, and was sentenced to fifty years' imprisonment, later reduced to thirty years. Nine years later, the Supreme Court held that the statute under which Brady had been convicted was unconstitutional because it "made the risk of death the price of a jury trial." *Id.* at 746. Brady filed a § 2255 motion, contending that his plea agreement was not voluntary because it had been coerced by fear of the death penalty. The Supreme Court refused to vacate Brady's plea, commenting that entry of a guilty plea "is a grave and solemn act" which reflects "defendant's consent that judgment of conviction may be entered without a trial." *Id*. at 748. The Court explained that even if Brady would not have pled guilty except to avoid the risk of death, that penalty was merely the "but for" cause of his plea and did not necessarily prove that his plea was coerced and involuntary. *Id*. at 750. The Court observed that guilty pleas are constitutional and provide a "mutuality of advantage" to both defendants and the government. *Id*. at 752. The Court held that Brady's plea was voluntary and intelligent, even though it turned

---

The Court: Are you willing to give up those rights for the benefit of the plea agreement?
The Defendant: Yes, ma'am." ECF No. 970 at 7.

out he was mistaken about whether the jury could have imposed the death penalty against him. The Court explained that this subsequent legal development did not invalidate his plea:

> [J]udgments may be made that in the light of later events seem improvident, although they were perfectly sensible at the time. The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision. A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action. More particularly, absent misrepresentation or other impermissible conduct by state agents, **a voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise**. A plea of guilty triggered by the expectations of a competently counseled defendant that the State will have a strong case against him **is not subject to later attack because the defendant's lawyer correctly advised him with respect to the then existing law as to possible penalties but later pronouncements of the courts, as in this case, hold that the maximum penalty for the crime in question was less than was reasonably assumed at the time the plea was entered.**

*Id*. at 756-57 (emphasis added). In sum, the subsequent ruling that Brady would not have faced the death penalty did not undermine the validity of his guilty plea.

In *United States v. Lockett*, 406 F.3d 207, 213-14 (3d Cir. 2005), the court of appeals upheld the validity of a collateral waiver provision in a plea agreement and rejected the defendant's request for resentencing based upon the Supreme Court's subsequent decision in *United States v. Booker*, 543 U.S. 220 (2005), which made the sentencing guidelines advisory. The court explained that "waiver of an appeal will not be invalidated merely because unanticipated events occur in the future." *Id*. at 213. In particular, "subsequent changes in the law do not undercut the validity of an appellate waiver [and] they do not render the plea itself invalid." *Id*. A subsequent development in the law that expands a right waived in the plea agreement does not undo the binding nature of that plea agreement. *Id*. (*citing Brady*, 397 U.S. at 757). The court of appeals explained that permitting defendants to obtain the benefit of favorable legal developments, while the prosecutor is stuck with the original bargain no matter

9

what happens later, would destroy the bargain. *Id*. at 214. "The possibility of a favorable change in the law occurring after a plea agreement is merely one of the risks that accompanies a guilty plea." *Id*.

In *McKeever v. Warden SCI-Graterford*, 486 F.3d 81 (3d Cir. 2007), the defendant pled guilty in state court pursuant to a plea agreement to numerous drug-related charges, including two counts under the Pennsylvania Corrupt Organizations Act ("PACOA"). The Pennsylvania Supreme Court subsequently held that the PACOA did not apply to individuals, like McKeever, who operated wholly illegitimate businesses. McKeever filed a collateral appeal, arguing that his guilty plea was not knowing and voluntary because he was "actually innocent" of the PACOA counts. *Id*. at 85. The court of appeals rejected this argument. *Id*. at 85-86 (*quoting Brady*, 397 U.S. at 756-57). The court explained that ordinary contract law principles apply to disputes over plea agreements and applied the *Restatement (Second) of Contracts* § 152 (1981) to determine whether the plea agreement should be rescinded. The court held that the mistake was one of law, not fact, and McKeever failed to show "that the resulting imbalance in the agreed upon exchange is so severe that he can not fairly be required to carry it out." *Id.* at 86. The court noted that there was no mistake at the time the plea agreement was made, because the law changed after the plea and sentence. *Id.* at 87. In conclusion, the court reiterated:

> Furthermore, the mistake here - a later change in law that was beneficial to the Defendant - is not of the type that is per se sufficient for avoidance of the plea agreement, as the allocation of risk of future changes is part of the bargaining process. *See Bownes*, 405 F.3d at 636 ("In a contract (and equally in a plea agreement) one binds oneself to do something that someone else wants, in exchange for some benefit to oneself. By binding oneself one assumes the risk of future changes in circumstances in light of which one's bargain may prove to have been a bad one. That is the risk inherent in all contracts; they limit the parties' ability to take advantage of what may happen over the period in which the contract is in effect.").

*Id*. at 89[5]; s*ee United States v. Fazio*, 795 F.3d 421, 425 & n.1 (3d Cir. 2015); *United States v. Jackson*, 523 F.3d 234, 244 (3d Cir. 2008); *United States v. Gwinnett*, 483 F.3d 200 (3d Cir. 2007).

The principles discussed in *Brady*, *Lockett* and *McKeever* directly apply to the situation here. Thompson knowingly and intelligently entered into a plea agreement pursuant to which he agreed, among other things: (1) to plead guilty; (2) the appropriate term of imprisonment was 151 months; and (3) he would waive his right to collaterally attack that sentence. Based upon the law at the time, Thompson was classified as a career offender. (ECF No. 473). He was able to negotiate a substantial downward departure and variance with the government. Under *Brady*, the plea agreement is not vulnerable to attack even though Thompson's sentence might be lessened under *Johnson* or other subsequent favorable developments in the law.

These precedential decisions arguably mandate a conclusion that if the alleged error relates to a future development in the law, there was no "miscarriage of justice" that would entitle Thompson to invalidate his plea agreement in this case. While there may be no need to consider the miscarriage of justice issue beyond that conclusion, the court will analyze the miscarriage of justice arguments raised by Thompson.

B. "Miscarriage of Justice"

In *Khattak*, the court of appeals considered a defendant's argument that a waiver of appeal provision violated public policy because a defendant cannot knowingly and voluntarily waive a right to appeal <u>future</u> errors. 273 F.3d at 560 (emphasis added). The court of appeals rejected that argument, noting that a waiver of the right to appeal future changes does not offend

---

[5] The dissent in *McKeever* would have held that the plea agreement was voidable based upon a material mutual mistake such that the parties would be returned to their pre-plea positions. *Id*. at 92.

the knowing and voluntary nature of the plea and that the waiver is enforceable unless a miscarriage of justice occurs. The court endorsed the approach of the Court of Appeals for the First Circuit in *United States v. Teeter*, 257 F.3d 14 (1st Cir. 2001). *Khattak*, 273 F.3d at 563. In *Teeter*, the court of appeals articulated several factors to consider in determining whether a "miscarriage of justice" has occurred which would justify disregard of an appellate waiver: (1) the clarity of the error; (2) its gravity; (3) its character (i.e., factual, advisory guideline, statutory maximum); (4) the impact on the defendant; (5) the impact on the government; and (6) the extent to which the defendant acquiesced in the result. *Teeter*, 257 F.3d at 25-26 (cited in *Khattak*, 273 F.3d at 563). The court of appeals in *Khattak* emphasized that these factors only provide guidance; the "governing standard" is whether the error "would work a miscarriage of justice." *Khattak*, 273 F.3d at 563.

The "miscarriage of justice" exception is narrow. *Id*. "[I]t will be a rare and unusual situation when claims of an unreasonable sentence, standing alone, will be sufficient to invalidate a waiver because of a miscarriage of justice." *Jackson*, 523 F.3d at 244 (enforcing appellate waiver even though defendant was sentenced to prison rather than probation). In *Mabry I*, 536 F.3d at 243, the court identified two situations in which a miscarriage of justice would occur: (1) if enforcement of the waiver would bar an appeal expressly preserved in the plea agreement; and (2) if counsel was ineffective or coercive in negotiating the plea agreement. In *Khattak*, the court noted two other situations identified by the Fourth Circuit Court of Appeals: (1) if the sentence exceeded the statutory maximum; and (2) if the sentence was based on an impermissible factor such as race. 273 F.3d at 562 (*citing United States v. Brown*, 232 F.3d 399, 403 (4th Cir. 2000)). The court will discuss each of the factors referenced in *Khattak*.

12

1. *Khattak* factors 1, 2 and 3

The first three *Khattak* factors (clarity, gravity and character of the error) are difficult to apply to this case. There was no error under the law at the time of the plea and sentence.[6] Any error is potentially grave, because it impacts defendant's liberty. The character of the alleged error relates to the calculation of an appropriate sentencing guideline, although it is clear that Thompson's actual sentence was based upon a lower guideline range, pursuant to the terms of the plea agreement. These factors appear to be somewhat neutral in light of Thompson and the government having agreed to a sentence that was below the statutory maximum term of life imprisonment and had no impermissible factor involved such as race discrimination or any claim of ineffective assistance of counsel during plea negotiations.

2. *Khattak* factor 4

The impact on Thompson from enforcing the collateral waiver provision is relatively less severe than in other cases in which a defendant challenges a career-offender designation. Although Thompson was classified as a career offender, the parties stipulated in the plea agreement that his guideline range would be based upon the drug quantity and non-career offender status. The parties stipulated to a total offense level of 31 and a criminal history category of III, for a guideline range of 135-168 months' imprisonment. The parties stipulated to a sentence to 151 months' imprisonment, in the middle of that range. By comparison, the career offender range would have been 262-327 months of imprisonment. In other words, Thompson received the benefit of a 111-month downward variance by being sentenced as if he were a non-career offender.

---

[6] In light of *Beckles*, 2017 WL 855781, there was no error. Thompson's prior convictions remain career-offender predicate offenses.

The court acknowledges that because at the time of his sentencing Thompson's applicable guideline range was calculated pursuant to the career offender guideline, he is ineligible for the two-level sentencing reduction pursuant to Amendment 782 and 18 U.S.C. § 3582(c)(2).[7] *See* ECF No. 1114. Defendant is able, therefore, to point to a tangible adverse impact resulting from his career offender designation. If Thompson qualified for Amendment 782, his offense level would be 29 and his advisory guideline range for that offense level and a criminal history category of III would be 120-135 months.[8] Thompson, who at the time of his sentencing was classified as a career offender, was sentenced because of his agreement with the government under the guidelines that were applicable to a non-career offender. After *Beckles*, he cannot challenge his status as a career offender, and thus he is not eligible for the sentencing decrease under Amendment 782. On balance, this *Khattak* factor favors enforcement of the waiver.

3. *Khattak* factor 5

The government would be adversely impacted if Thompson were permitted to challenge his sentence. *Lockett*, 406 F.3d at 213-14 (the government would lose the benefit of its bargain if the defendant could escape the plea agreement based on favorable legal developments). Part of the plea bargain was Thompson's agreement to not file collateral attacks, so that the government need not expend resources to respond to them. It is not entirely clear that if Thompson prevailed, the appropriate relief would be resentencing. Instead, the court may have to examine whether the entire plea agreement should be rescinded based on a material, mutual mistake. *See*

---

[7] A "collateral waiver" provision in a plea agreement, like that in issue here, would not prevent a defendant from seeking a modification of his sentence under 18U.S.C. § 3582(c) for a retroactive sentence reduction due to a retroactive change in the guidelines. *See United States v. Penn*, Crim. No. 08-224, 2012 WL 3017865, at *3-4 (W.D. Pa., July 23, 2012) ("a motion to modify a sentence pursuant to 18 U.S.C. § 3582(c) is not a 'collateral attack' as traditionally understood.")

[8] The low end of the guideline range must be the statutory mandatory minimum of 120 months imprisonment. U.S.S.G. § 5G1.1.

*McKeever*, 486 F.3d at 86-87 (applying contract law principles to determine whether plea agreement should be rescinded).[9] If the plea agreement is rescinded, the government would have to consider whether to revive the plea offer or go to trial on a case which would be over nine years old. The age of the case could be problematic for the memory and availability of witnesses. *Mabry v. Shartel*, 632 F. App'x 707, 711 (3d Cir. 2015) ("*Mabry II*"). If only a resentencing is necessary, the adverse impact on the government is lessened. There is potential that the government could be adversely impacted if Thompson were permitted to reopen this plea agreement. On balance, this *Khattak* factor favors enforcement of the waiver.

4. *Khattak* factor 6

Defendant actively acquiesced in the result. Thompson entered into a plea agreement with respect, among other things, to: (1) his guilt; (2) the appropriate term of imprisonment; and (3) his waiver of the right to collaterally attack his sentence. As a part of the plea agreement, the parties agreed that he would be sentenced to 151 months in prison. This agreement represented a negotiated, global resolution of the charges against him.

In retrospect, it is possible that Thompson could have negotiated an even lower sentence with the government. The court may have refused to accept a negotiated sentence that was sixteen months over the high end of an advisory guideline range of 120-135 months, as calculated without the career offender enhancement and with the benefit of Amendment 782. On the other hand, the outcome could have been far less favorable to Thompson. The statutory minimum penalty was 120 months and the maximum penalty was life imprisonment. Had he not entered into a plea agreement with the government and been convicted at trial, he faced at the time sentencing under the career offender guidelines. Without the three-level reduction for acceptance of responsibility, he would have been at offense level 37 and criminal history

---

[9] Because the plea agreement is being enforced, the court need not reach this issue.

category VI, for a guideline range of 360 months to life.[10] U.S.S.G. § 4B1.1. Both sides evaluated the potential risks and benefits and decided that the agreed-upon sentence of 151 months was acceptable. *See Khattak*, 273 F.3d at 561 ("Allowing defendants to retract waivers would prolong litigation, affording defendants the benefits of their agreements while shielding them from their self-imposed burdens.").

Defendant points out that he could not have waived his *Johnson*-based arguments because that case had not been decided when he executed the plea agreement. As the court of appeals explained in *Khattak*, "[w]aivers of the legal consequences of unknown future events are commonplace." *Id.*; *accord Lockett*, 406 F.3d at 214 ("The possibility of a favorable change in the law occurring after a plea agreement is merely one of the risks that accompanies a guilty plea.").

The court of appeals has rejected two similar attempts to invalidate appellate waivers based on *Johnson*, albeit in nonprecedential opinions. In *Mabry II*, 632 F. App'x 707, the court of appeals enforced the appellate waiver provision and refused to reach the merits of Mabry's argument that he was no longer a career offender. The court explained that subsequent changes in the law do not work a miscarriage of justice. *Id.* at 710 (*citing Lockett*). In applying the *Khattak* factors, the court noted that because Mabry entered into a plea agreement, he could not demonstrate the gravity of any alleged error, the impact on the government would be great because it could be required to prosecute a ten-year-old crime, and Mabry had acquiesced in the result by entering into a plea agreement. *Id.* at 711. In *United States v. Agurs*, 629 F. App'x 288

---

[10] The parties stipulated in the plea agreement that the cocaine and money laundering convictions resulted in offense level 34, without the career offender enhancement. With a criminal history category of III and without the three-level reduction for acceptance of responsibility, the guideline range would have been 188-235 months. With the benefit of Amendment 782, without the three-level reduction for acceptance of responsibility, the offense level would be 32, resulting in a guideline range of 151-188 months.

(3d Cir. 2015), the defendant and the government entered into a Rule 11(c)(1)(C) plea agreement with a stipulated sentence of 120 months' imprisonment. The defendant sought to withdraw his guilty plea when he became aware of a decision which provided a strong argument that he was not a career offender. The court denied Agurs' motion and held that his guilty plea was knowing and voluntary and enforcing the appellate waiver did not constitute a miscarriage of justice. *Id*. at 290. The court specifically rejected Agurs' attempt to withdraw his plea based on *Johnson*. The court explained that assuming *Johnson* invalidated Agurs' career offender designation, Agurs could not challenge his career offender status due to his appellate waiver. *Id*. at 290 n.6. The court explained that an "intervening change in the law does not render the appellate waiver unknowing or involuntary or otherwise undo its binding nature." *Id*. (*citing Lockett*). This factor weighs heavily in favor of finding there is no miscarriage of justice.

After considering all the *Khattak* factors, the court concludes that Thompson's plea agreement, including his waiver of the right to collaterally attack his sentence, remains valid and enforceable and does not work a miscarriage of justice.

C. Recognition of contrary decision

In *United States v. Swerdon*, No. 3:12cr87, 2016 WL 4988065, at *6 (M.D. Pa. Sept. 19, 2016), the court faced a similar situation, although the plea agreement at issue in *Swerdon* did not contain an agreed-upon sentence. The court in *Swerdon* granted defendant's § 2255 motion and permitted him to challenge his designation as a career offender based on *Johnson*, despite the collateral waiver provision in his plea agreement. After applying the factors identified in *Khattak*, the court held that a miscarriage of justice occurred. The court did not address *Brady*, *Mabry II* or *Agurs*, and reasoned that a defendant could abandon only "known rights" in a plea agreement waiver provision, and could not have relinquished a claim based on *Johnson*. *Id*. (*citing United States v. McBride*, 826 F.3d 293, 295 (6th Cir. 2016) (holding that *Johnson*-based

17

argument had not been waived in plea agreement)).[11] The holding and analysis in *Swerdon* is difficult to reconcile with the result reached in this case. The court respectfully concludes that *Swerdon* was wrongly decided because it is contrary to the decisions cited above enforcing plea agreements despite unforeseen legal developments. *Brady*, 397 U.S. at 742; *Mabry II*, 632 F. App'x 707; *Agurs*, 629 F. App'x 288.

IV. Conclusion

Under the applicable precedential case law, the court is constrained to conclude that Thompson's collateral waiver is enforceable and does not result in a miscarriage of justice.

V. Certificate of Appealability

When a district court issues a final order denying a § 2255 motion, the court must also make a determination about whether a certificate of appealability ("COA") should issue or the clerk of the court of appeals will remand the case to the district court for a prompt determination as to whether a certificate should issue. *See* 3rd Cir. LAR 22.2. When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a certificate of appealability should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Slack v. McDaniel*, 529 U.S. 473, 484–85 (2000); 28 U.S.C. § 2253.

---

[11] In *McBride*, the court of appeals cited *United States v. Olano*, 507 U.S. 725, 733 (1993), for the proposition that a defendant can abandon only "known rights." *Olano* did not involve plea agreements. In *Olano*, alternative jurors remained in the room during jury deliberations and the Court was comparing waiver and forfeiture in the context of Federal Rule of Criminal Procedure 52(b) (plain error).

18

As noted above, in *Swerdon*, 2016 WL 4988065, the court granted defendant's § 2255 motion and permitted him to challenge his designation as a career offender based on *Johnson*, despite the collateral waiver provision in his plea agreement. Thus, jurists of reason may find it debatable whether Thompson's collateral waiver provision is enforceable. In light of the Supreme Court's decision in *Beckles*, however, it is clear that Thompson does not have a valid claim on the merits of his § 2255 motion. Therefore, a certificate of appealability shall not issue.

In accordance with the foregoing, the amended § 2255 motion (ECF No. 1156) will be denied. An appropriate order will be entered.

March 8, 2017

BY THE COURT:

/s/ *Joy Flowers Conti*
Joy Flowers Conti
Chief United States District Judge